No. 39,600

Frank H. Amerine, Katie Amerine Tilson and Charlie P. Amerine, *Appellants*, v. Thomas H. Amerine, Executor of the Estate of C. E. Amerine, Deceased, *Appellee*.

(280 P. 2d 601)

Opinion filed March 5, 1955.

*Pat Warnick,* of Wichita, argued the cause, and *Ralph C. Fleagle,* of Syracuse, and *Henry E. Martz* and *Alan B. Phares,* both of Wichita, were with him on the brief for the appellants.

*Logan N. Green,* of Garden City, argued the cause, and *P. C. Frazee,* of Syracuse, and *Ray H. Calihan, Daniel R. Hopkins,* and *Ray H. Calihan, Jr.,* all of Garden City, were with him on the brief for the appellee.

The opinion of the court was delivered by

THIELE, J.: This appeal arises out of a proceeding originally commenced in the probate court for the probate of a will, the specific question now presented being whether the proof showed that the will was executed in the manner provided by G. S. 1949, 59-606.

The will in question was made under date of September 16, 1947, by C. E. Amerine and by its terms bequeathed and devised all of the testator's property to his son Thomas H. Amerine, who was named as executor. The will contains a full attestation clause bearing the names of Paul M. Johnson and Forest V. McCalley as witnesses.

On April 21, 1952, Thomas H. Amerine filed his petition in the probate court alleging that C. E. Amerine died on April 16, 1952, leaving a last will and testament attached to the petition; that the will had been executed in all respects according to law; that the deceased left as his heirs his sons Thomas H., Frank and Charles and his daughter Katie Tilson, all of full age; that Thomas H. Amerine was a legatee and devisee under the will; and at the time of its execution C. E. Amerine was of sound mind and memory and not under restraint or undue influence; that to the end the will might be proved, established and admitted to probate the petition prayed that the

court set a time for the hearing, cause the witnesses to attend and upon the hearing that the will be admitted.

There is no complaint that conditions precedent for the hearing in the probate court were not had and done. The children of C. E. Amerine, other than Thomas, filed their written defenses raising the questions that the purported will was not the will of C. E. Amerine and was not executed in the manner provided by law; that at the time of its execution C. E. Amerine did not have capacity to know or understand his acts, the nature and extent of his property, the disposition thereof or the natural objects of his bounty; that he was subject to the undue influence of other persons and the purported will was the result of such fraud and undue influence and that probate thereof should be denied.

Upon hearing had in the probate court the will was admitted to probate and Thomas H. Amerine was appointed as executor. In due time the objecting brothers and sister perfected their appeal to the district court.

At the trial in the district court the proponent of the will offered the testimony of eight witnesses and when he rested the opponents demurred to the testimony for the reason the facts shown were not sufficient to establish due execution and attestation under the law and were not sufficient to establish a *prima facie* case. The trial court overruled the demurrer and the opponents then stated they had no evidence to offer as to probate (sic) of the will or as to the competency of the testator. Thereafter the district court entered judgment that the will be admitted to probate. Opponents' motion for a new trial was denied and they perfected their appeal to this court.

Appellants specify as error that the district court erred: 1. In overruling their demurrer to appellee's evidence; 2. In allowing appellee to impeach the witness McCalley; and 3. In allowing Thomas H. Amerine, legatee and devisee, to testify concerning transactions had with the deceased.

Preliminary to discussing appellants' contentions we note that insofar as need be noticed here, our probate code (G. S. 1949, Ch. 59) provides that any person of sound mind and memory and possessing the rights of majority may dispose of his property by will (59-601); and that such will shall be in writing, signed at the end by the party making the same, and shall be attested

and subscribed in the presence of such party by two competent witnesses who saw the testator subscribe the same (59-606). The code further provides that on the hearing of a petition for the probate of a will at least two of the subscribing witnesses shall be examined if they are within the state and competent and able to testify, otherwise the court may admit the testimony of other witnesses to prove the capacity of the testator and the due execution of the will and as evidence of such execution may admit proof of the handwriting of the testator and of the subscribing witnesses (59-2224).

Appellants make complaint of the order in which appellee presented his proof but we shall not comment thereon for we are concerned only whether the proof as a whole showed that statutory requirements as to capacity and due execution were met. That the testator possessed the rights of majority was not contested. While the evidence as abstracted does not disclose a specific question as to his age no possible inference could be reached to the contrary. The objections to probate did include lack of testamentary capacity. At least three witnesses, whose competency to do so was not questioned, testified he was of sound mind and none testified to the contrary.

In our opinion the appellees' evidence made a *prima facie* case as to the testator's possessing rights of majority and as to his being of sound mind.

The gist of appellant's complaint is that execution of the will in the presence of two attesting and subscribing witnesses was not proved. In view of the fact the issue arises on a ruling on a demurrer, we limit our review to determine if there was evidence of due execution of the will sufficient to make a *prima facie* case. Paul M. Johnson, one of the witnesses to the will testified without equivocation that in the presence of Thomas Amerine, C. E. Amerine, Forest McCalley and the witness, C. E. Amerine said that the witness had been asked to come to a designated room to sign his will; that C. E. Amerine said it was his last will; that C. E. Amerine signed it and that the witness signed it in the presence of C. E. Amerine and McCalley and he saw McCalley sign it. McCalley testified that he had no recollection of the event; that he couldn't recall if he signed; that he did not know whether his name on the will was his signature or not and wouldn't say. Following that evidence, Bostwick, the pro-

bate judge, Owings, a banker, Scott, formerly the court reporter and at the time a banker, each testified that he was familiar with the signature of McCalley and that his name as signed to the will was his signature. This evidence was objected to on the ground that Bostwick had not shown himself to be a handwriting expert and qualified to give an opinion; that Owings and Scott had not shown themselves to be qualified; that McCalley was present and their testimony was an attempt to impeach McCalley, the appellee's own witness.

Appellants' contention is that appellee may not impeach his own witness; that the so-called impeaching evidence was erroneously received; that without such evidence there was no proof of due execution of the will, and therefore their demurrer should have been sustained. In support of their contentions appellants direct our attention to *Johnson v. Leggett,* 28 Kan. 590; *The State v. Sorter,* 52 Kan. 531, 34 Pac. 1036; *The State v. Keefe,* 54 Kan. 197, 38 Pac. 302; *Deering v. Cunningham,* 63 Kan. 174, 65 Pac. 263; *Johnston v. Marriage,* 74 Kan. 208, 86 Pac. 461, 87 Pac. 74; and *Steele v. Woodmen of the World,* 115 Kan. 159, 222 Pac. 76, all of which recognize the general rule that a party may not impeach his own witness. We find it unnecessary to take up the above cases and analyze them to show recognized exceptions to the general rule stated. We first observe that under G. S. 1949, 59-2224 the proponent of the will had no choice but to examine the subscribing witnesses to the will if they were within the state and competent and able to testify. It may hardly be said that any general rule that a party calling a witness vouches for his credibility and may not controvert his testimony has any application to a compelled witness (70 C. J. 796; 58 Am. Jur. 371). In any event the rule that a party may not impeach his own witness does not mean that if the first witness testify to a certain fact, a later witness is barred from testifying to the contrary on any theory the latter witness is impeaching the first—the rule is that a party is not concluded by the statement of any witness but has the right to introduce other competent proof to show the fact even though the latter testimony may contradict or impeach the testimony of the previous witness. See *Deering v. Cunningham,* supra; *Broquet v. Investment Co.,* 105 Kan. 632, 185 Pac. 726; 58 Am Jur. 442. In the instant case the witness McCalley would neither admit nor deny that his name as signed to the will was his signature. If the matter must

rest there, the witness had it in his power to say whether or not Amerine made a valid will. That is not the law. McCalley's testimony left the situation about the same as though he were absent from the state and unavailable as a witness or incompetent and unable to testify. And we do not believe it may be said, when he refuses to affirm or deny his signature to the will, that other evidence that he did so impeached him. There were two witnesses to the will and the first one to testify could not set the pattern of proof nor its content for the second and the testimony of Bostwick, Owings, and Scott was not incompetent for the asserted reason it impeached that of McCalley.

We need not comment on the fact that the attestation clause of the will, which was admitted in evidence, stated that Amerine signed the will in the presence of the witnesses and that they at his request and in his presence and in the presence of each other, signed their names as witnesses. But see *In re Estate of Wallace,* 158 Kan. 633, 149 P. 2d 595.

At the trial appellants objected to the testimony as to handwriting for the asserted reason the witnesses were not shown to be handwriting experts. The contention is not pursued at length in the brief. Each witness stated he knew McCalley's signature and in his opinion the signature to the will was that of McCalley. The testimony was competent under *Arthur v. Arthur,* 38 Kan. 691, 17 Pac. 187, and *Burns v. Clark,* 105 Kan. 454, 185 Pac. 27. And see also 20 Am. Jur. 705 and 32 C. J. S. 209.

Appellants' final contention is that the district court erred in permitting Thomas H. Amerine, legatee and devisee under the will of his father, to testify as to transactions with the deceased. The argument includes a repetition of the claim of impeachment which has been discussed previously. Appellants direct attention to G. S. 1949, 60-2804 that no person shall be allowed to testify in his own behalf in respect to any communication or transaction had personally by such party with the deceased where he claims to have acquired title from the deceased where the adverse party is an heir at law or next of kin, as more fully disclosed by the statute. We need not detail the testimony of the witness. It covered matters not presently of importance as appellants' objections to them were sustained. The witness was permitted to testify he was present when the will was executed and that his father paid McCalley for drawing the will. Even if incompetent, the evidence did not

affect the result. But without elaboration we hold that the testimony did not include any transaction or communication between the witness and his father, and did not violate the above statute.

We have no hesitancy in holding that the appellee's evidence made a *prima facie* case of due execution of the will of C. E. Amerine and that the trial court did not err in overruling appellants' demurrer thereto. The appellants advised the district court they had no evidence to offer in their own behalf and thereupon the trial court adjudged that the will be admitted to probate.

The judgment of the trial court is affirmed.