No. 43,361

William Burke Burnett, *Appellee,* v. Noema Burnett, *Appellant.*

(387 P. 2d 195)

filed December 7, 1963. Opinion

*Walter F. McGinnis,* of El Dorado, argued the cause, and *Allyn M. McGinnis,* of El Dorado, and *Frank E. Daily, Jr.,* of Coldwater, were with him on the briefs for the appellant.

*Harold S. Herd,* of Coldwater, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is an appeal from a judgment annulling a marriage, settling property rights, and allowing attorney fees.

The salient facts, which are not in dispute, will be summarized.

The defendant, Noema Burnett, was divorced from her former husband in Sedgwick County, Kansas, October 14, 1958. On October 26, 1958, the plaintiff, William Burke Burnett, and defendant went through a marriage ceremony in Miami, Oklahoma. Both were residents, and have remained residents, of the State of Kansas. The parties lived together at Wichita until December 1, 1958, when they moved to Colorado. They returned to Kansas April 1, 1959, where they lived on the farm of plaintiff's father. Sometime thereafter the father died and plaintiff inherited a one-half interest in the farm which consisted of some 3,000 acres. The parties continued to live together on the farm until December, 1961.

On October 7, 1961, the plaintiff filed his petition for divorce. At this point the record is somewhat confusing. It appears the defendant was supposed to leave the farm on December 1, 1961, but instead the plaintiff left sometime in December. The parties lived together for two days, December 9 and 10, 1961, at a motel in Dodge City. The plaintiff could not remember whether he stayed on the farm with defendant thereafter.

On December 30, 1961, defendant filed her answer to the petition alleging condonment. Later, and on February 21, 1962, plaintiff filed his first amended petition in which he alleged that defendant was incapable of entering into the Oklahoma marriage because her Kansas divorce had not become final.

Thereafter, on a date not disclosed by the record, defendant filed her answer to the amended petition in which she alleged:

"Further answering the Defendant states that since the filing of this action she and the plaintiff have continued to live together as husband and wife except for a short period during the month of December, 1961, that they have continued to occupy the same home and same bed all said times; that they have made weekend trips together occupying the same bed, and that if the Defendant is guilty of the charges of extreme cruelty and gross neglect of duty, and this she specifically denies, then the Plaintiff has condoned the same and has no grounds for divorce."

On February 9, 1962, defendant filed an amended answer in which she prayed for a divorce on the grounds of extreme cruelty and gross neglect of duty. On March 20, 1962, defendant filed a cross-petition in which she prayed for a divorce, alimony and a division of property. Plaintiff replied with a general denial. The above quoted allegation was carried in all of defendant's pleadings.

The case proceeded to trial and at the conclusion thereof a colloquy occurred between court and counsel in which the court indicated that it would determine the issue on the invalidity of the Oklahoma marriage. The defendant then requested permission to amend her cross-petition to include an allegation of common-law marriage. Thereupon the court stated:

"I think since we have gone this far with both parties relying on the marriage ceremony contract, I'll overrule the motion to amend at this time."

Subsequently the trial court rendered judgment annulling the Oklahoma marriage and adjusted the property rights of the parties as on an annulment decree. Thereupon defendant perfected the instant appeal.

In this court the appellant specifies as error, among other matters: (1) The judgment of the trial court that the Oklahoma marriage was void; (2) the refusal of the trial court to decree a valid common-law marriage of the parties, and (3) the refusal of the trial court to allow defendant to amend her pleadings so as to allege a common-law marriage, the facts constituting such marriage having been pleaded and proved.

We pass the first question which would require a review and construction of the marriage and divorce laws of Oklahoma.

The marriage status of the parties can be determined under the well-established law of this state. Appellant alleged in her cross-petition:

"That Plaintiff herein and Defendant herein were married at Miami, Oklahoma upon the 26th day of October, 1958, and have lived together as husband and wife since that time . . ."

The foregoing allegation, although not concluding that a common-law marriage existed, did plead the facts which constitute a common-law marriage.

The fact that the parties lived together as man and wife long after the six months' waiting period following appellant's Kansas divorce, and the divorce had become final, is not disputed.

The appellee testified:

"Q. Now you say you haven't lived with the defendant as husband and wife since when? A. Oh, as husband and wife I'd say September [1961]."

We need not detail all of the evidence which established the common-law marital status. It was admitted. Neither need we review the well-established rules governing the facts and circumstances which establish a common-law marriage. Those interested in the elementary principles are referred to *Renfrow v. Renfrow*, 60 Kan. 277, 56 Pac. 534.

This court has held in numerous cases that where the parties continue to live together as husband and wife after the marriage restrictions are removed they become husband and wife in fact under the common law.

In *Smith v. Smith*, 161 Kan. 1, 165 P. 2d 593, we held:

"Common-law marriages are recognized in this state, even though the circumstances are such as to authorize the prosecution of the parties under G. S. 1935, 23-118.

"The fact that the parties entered into a common-law marriage does not prevent one of them from later maintaining an action for divorce, if facts exist which are recognized by our statutes (G. S. 1943 Supp. 60-1501) as grounds for divorce." (Syl. ¶¶ 2, 3.)

This court announced the applicable rule in *Knollenberg v. Meyer*, 151 Kan. 768, 100 P. 2d 746, where it is held and said:

"In an action to partition real estate, the record is examined, and it appears that A and B entered into a prenuptial contract within a few days after A had been divorced in Kansas; that within less than six months from the date of the divorce decree A and B were married in Oklahoma, and returned to Kansas immediately, where they lived together as man and wife for several years. *Held*, that the prenuptial contract was valid and both parties were bound by it." (Syl.)

And in the opinion said:

"In this case we are all agreed that even if the marriage in Oklahoma be disregarded, this couple became man and wife in the eyes of the law six months after the divorce decree was entered. (See *Freeman v. Fowler Packing Co.*, 135 Kan. 378, 11 P. 2d 276.) Thus, whether we look to the ceremony in Oklahoma or the relationship that came into being on account of the parties living together as man and wife in Kansas, we find nothing that would make the prenuptial contract void." (p. 778.)

In *Freeman v. Fowler Packing Co.*, 135 Kan. 378, 11 P. 2d 276, we said:

"Thelma Wyatt was divorced from her husband on March 22, 1929. Two weeks later, on April 5, she married Benson Freeman, the workman. The statute reads:

" 'It shall be unlawful for either party to such divorce suit to marry any

other person within six months from the date of the decree of divorcement; . . . and every person marrying contrary to the provisions of this section shall be deemed guilty of bigamy, and such marriage be absolutely void.' (R. S. 60-1512.)

"The result is, the formal marriage of Thelma and Benson Freeman was void. They continued, however, to live together as husband and wife after expiration of the six months' period, and were so living together at the time of his death, which occurred on September 13, 1930. This being true, after the time elapsed within which Thelma was forbidden to marry, she was Benson's common-law wife (*Renfrow v. Renfrow*, 60 Kan. 277, 56 Pac. 534), and at his death she became his widow." pp. 379, 380.)

In a proceeding to annul a marriage, the trial court has the responsibility of seeing that the marital status is not disturbed unless clearly sanctioned by law. The marriage relationship is a matter of public concern. Proceedings to dissolve marriages are not favored under the law. Annulment proceedings are equitable in nature and equitable principles should prevail. In an annulment proceeding it is the present marital statuts that is to be considered, not whether a prior marriage between the parties was void.

When appellant's pleadings alleged facts constituting a common-law marriage, and the undisputed evidence supported the allegations, the trial court was without authority to annul the Oklahoma marriage and dispose of the property of the parties as in an annulment proceeding. The decree annulling the Oklahoma marriage accomplished nothing. The parties were still husband and wife under the common law.

An annulled marriage strips the parties of all legal rights which follow the dissolution of a valid marriage. The woman loses all right to alimony and is deprived of all interest in the man's property. (*Johnson County National Bank & Trust Co. v. Bach*, 189 Kan. 291, 369 P. 2d 231.)

What has been heretofore stated and held requires a reversal of the judgment with directions to the trial court to decree a valid marriage of the parties under the common law and to proceed with the determination of their marital rights under the law pertaining to divorce and alimony, and it is so ordered.

In conclusion it should be pointed out the court has not overlooked appellant's request that her attorneys be awarded a reasonable fee for legal services performed on her behalf in the preparation and presentation of the instant appeal. Our ruling on such request has been deferred for further consideration and will be made by separate order.